Lipe Henslee v. Commissioner.
Henslee v. Commissioner
Docket No. 41823.
United States Tax Court
T.C. Memo 1954-52; 1954 Tax Ct. Memo LEXIS 191; 13 T.C.M. (CCH) 505; T.C.M. (RIA) 54158; May 28, 1954, Filed John J. Hooker, Esq., and Quentin L. Householder, Esq., 522 Stahlman Building, Nashville, Tenn., for the petitioner. Homer F. Benson, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency of $7,521.92 in petitioner's income tax for the calendar year 1946. The issues presented are these: (1)Whether $30,000 received by petitioner in connection with an option and sale of certain corporate stock was a commission paid him for his services in making the sale, and hence was ordinary income, as determined by the Commissioner, or whether it was paid him for his proprietary interest in the option for the sale of the stock, and hence was a capital gain, as claimed by petitioner. (2) Whether the collection of the tax in question is barred *192 by the statute of limitations under section 275, I.R.C.
Findings of Fact Petitioner, a resident of Dickson, Tennessee, on January 15, 1947, filed his income tax return for the calendar year 1946 with the collector of internal revenue for the district of Tennessee. On April 4, 1947, he filed an amended tax return. Respondent's notice of deficiency was dated March 13, 1952. The transaction involved herein was begun in January, 1946, when C. P. McCarver, hereinafter called "Mack" contacted petitioner whom he had known for 15 years. He explained that distilleries, which were then limited to making alcohol for the Government, were to be permitted to make whiskey for a short period and hence there would be a demand for white oak staves used in the making of barrels for storing whiskey. The large distilleries had a monopoly on the output of staves, and Mack was seeking a source where staves could be bought to sell to the smaller distilleries. Petitioner was then collector of internal revenue at Nashville, Tennessee, and after his talk with Mack, he introduced Mack to George N. Welch, Jr., who was his assistant collector, and who was also looking after the *193 estate of his father, George N. Welch, Sr., deceased, which estate owned the entire capital stock of George N. Welch Stave Co., which George and the other heirs had inherited. This Stave Company manufactured staves of the kind desired. Upon being contacted by Mack and petitioner, George Welch, Jr., hereinafter called Welch, acting for the owners of the Stave Company, with authority so to do, advised them that the Stave Company would not sell staves but would sell its entire capital stock for $771,100. The option to sell, together with the stock, was to be deposited in escrow in a Nashville bank, together with $125,000 in cash deposited by purchaser of the option, which sum would be forfeited as liquidated damages if the balance of the purchase price was not paid within six months. Mack went at once to Philadelphia and New York, seeking some one from whom the $125,000 could be secured, but without success. Later petitioner and Mack went to New York several times for the same purpose and finally, while there, on February 4, 1946, Distillers Factors Corporation, hereinafter called D.F.C., agreed to loan and advance $125,000 in cash to secure the option contract. Petitioner then *194 telephoned Welch that they had obtained the money for the option. Upon returning to Nashville they advised him it would be several days before the $125,000 would be forthcoming, and Welch demanded that $25,000 be put up immediately to bind the contract until the $125,000 could be deposited. Sam Lynch, an interested party, tendered Welch a check for $25,000, which he refused to accept unless petitioner would endorse it, whereupon petitioner did endorse it and Welch accepted it, but when the $125,000 was deposited, the $25,000 check was returned uncashed. On February 14, 1946, the option contract of purchase was executed in writing in the name of Mack as purchaser and the Welch heirs as sellers. For the sum of $771,100 sellers agreed to sell all stock of the Stave Company to purchaser, $125,000 in cash to be deposited with escrow agent, a Nashville bank, and balance of the purchase price to be paid on or before September 14, 1946. Upon deposit of the stock, the escrow agent was to distribute the $125,000 to the Welch heirs, and if the balance of the purchase price was not paid by September 14, 1946, the stock was to be returned to the Welch heirs and the $125,000 distributed to the *195 heirs was to be considered liquidated damages. By written instrument dated February 23, 1946, Mack assigned the above option contract to D.F.C. as security for the $125,000 advanced by it, together with his three promissory notes of that date, aggregating $125,000, payable to D.F.C. On June 26, 1946, Louis Halle of New York, attorney for D.F.C., sent this assignment and two of the notes for $50,000 each to the escrow bank in Nashville for collection and instructed the bank to "deliver to Mr. Lipe Henslee" the notes upon payment thereof and mail the proceeds to Halle. Carbon copy of this letter was mailed to Henslee. On July 3, 1946, Halle again wrote the bank, stating therein: "Received your letter dated June 27th. "I have this day talked to Mr. Henslee by telephone and have agreed to extend the time until July 15th. You will therefore kindly hold the papers until that day, instead of until July 8th, as previously written to you." Thereafter the notes signed by Mack and payable to D.F.C., being in part past due and unpaid, D.F.C. was threatening to bring suit unless $60,000 was immediately paid thereon. Gredske, who had once been financially aided by Mack and who had known *196 petitioner while he was in the Navy, was appealed to by them and he came to Nashville from New York and met in conference with petitioner and Mack, and finally agreed to advance, and did advance, the $60,000 in cash and thereby prevented D.F.C. from bringing suit, but Gredske made such payment only upon condition that Mack and petitioner would assume payment to him of $30,000 each if he should incur loss therefrom, and they each then and there orally agreed so to do. On August 28, 1946, D.F.C. was paid all sums advanced by it, and executed an instrument endorsed, "Distillers Factors Corporation To C. P. McCarver and Lipe Henslee, General Release", which recited therein payment by "C. P. McCarver and Lipe Henslee" of all sums due D.F.C. by them. After the option contract was executed, petitioner and Mack sought diligently to find a purchaser for the stock. They made a number of trips to New York and incurred considerable expense in their efforts to find a purchaser. Both became apprehensive lest a purchaser not be found in time. Finally, on August 26, 1946, due to their efforts, two subsidiaries of Seagrams Distillery, viz: Hunter-Wilson Distilling Company, Inc., and the Carstairs *197 Brothers Distilling Company, entered into an option contract with Mack as the seller to purchase all of the stock for a price substantially in excess of $771,100, and on September 6, 1946, closed the deal and paid Mack the full purchase price therefor. Mack, on the same day, paid petitioner $32,500, $2,500 of which was for expense money advanced to Mack by petitioner from time to time during the six and a half months of sales negotiations. The $30,000 was paid to petitioner as his share of the net profits on the sale of the option contract, of which contract petitioner was an equitable joint owner and had been for more than six months, viz: since February 14, 1946. Respondent in his deficiency notice determined that the $30,000 was paid petitioner as commission and hence constituted ordinary income and was 100 per cent taxable, while petitioner in his income tax return reported same as a long-term capital gain and 50 per cent taxable. Opinion In his pleading the petitioner alleged (a) that the Commissioner erred in determining that the $30,000 was a commission paid for services rendered rather than a capital gain from the sale of a capital asset, and in the alternative (b) that *198 the proceeding is barred by the statute of limitation under section 275, I.R.C.
Respondent in his answer invoked section 275(c)[1], alleging that petitioner in his tax return omitted from his gross income an amount properly includible therein in excess of 25 per cent. The answer to both of these issues is dependent upon the nature of the $30,000 payment. If petitioner is right in his contention that same was a long-term capital gain and only 50 per cent taxable, then he did not omit 25 per cent of his gross income *199 and should be sustained on both issues. If, on the other hand the payment was for services rendered by petitioner and constituted a commission, then Commissioner must be sustained on both issues. Since respondent by affirmative allegation sought to bring the assessment within the five-year limitation, the burden of proof as to that issue was upon him to show an omission by petitioner of 25 per cent of his gross income, which he has failed to do. C. A. Reis, 1 T.C. 9; Joseph Middlebrook, Jr., 13 T.C. 385; Elvina Ratto, 20 T.C. 785. Upon the controlling issue whether the $30,000 was a commission or a long-term capital gain petitioner offered all of the evidence. Based thereon and the record as a whole we have found as an ultimate fact that the $30,000 was not paid petitioner as a commission, but was his net profit on the sale of the option contract in which he had been an equitable joint owner since its execution on February 14, 1946. Respondent's argument to the contrary is based upon his alleged premise that: "The record discloses no substantial evidence supporting petitioner's contention of an interest, legal or equitable, in either *200 the option contract or the stock." The record refutes respondent's determination that the sum in question was paid as a commission. Petitioner, Mack and Welch, the parties who knew more about the transaction than any one else, and Mack and Welch were disinterested witnesses, each categorically denied that the sum paid petitioner was a commission. Welch testified that he understood that petitioner and Mack were "jointly interested" in the transaction, and that Mack told him "petitioner was interested with him"; furthermore, that in the early stages of the transaction, before the earnest money was deposited, Welch had an offer from another party in New York by telephone for a much larger sum, but due to his friendship for petitioner and his belief that petitioner was interested in the option contract, he would not consider it. From the transcript of the evidence we cite the following questions and answers given by Mack when he was a witness: "Q The essential thing about this is: Was Mr. Henslee acting as an employee or representative of you in a commission capacity, or were you partners? "A We were partners in full and he was worried about being partners, too. "Q He was worried *201 about getting anything out of it? "A He was afraid of the thirty and I was afraid of losing the farm." Petitioner testified at length concerning the transaction and denied that any part of the $30,000 was paid him as a commission, but was his part of the profit on the option contract. The evidence reveals that petitioner and Mack were jointly interested in the transaction and that they acted together in the various stages thereof during the six months and longer that the transaction was pending. That petitioner's name is not in the option contract is not controlling. He contributed his time, his money and his credit in securing the option and promoting the sale, and the written release for the payment of the earnest money was issued jointly to petitioner and Mack. Petitioner has met his burden of proof on the first issue, and respondent has failed to meet his on the second, and hence upon both issues petitioner is sustained. Decision will be entered for the petitioner. Footnotes
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. * * *
(c) OMISSION FROM GROSS INCOME. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed. * * *
(f) For the purposes of subsections (a), (b), (c), (d), and (e), a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day.↩